**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**AMY A.,**

      **Plaintiff,**

**vs.**                                                          **CIVIL ACTION NO. 3:25-CV-00257**

**FRANK BISIGNANO,**
*Commissioner Of Social Security*,

      **Defendant.**

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

This is an action seeking review of the final decision of the Defendant Commissioner of Social Security (hereinafter "Commissioner") denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered April 19, 2025 (ECF No. 2), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in support of her complaint (ECF No. 6) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 7).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** the Plaintiff's request for remand (ECF No. 6), **DENY** the Defendant's request to affirm the final decision (ECF No. 7); **REVERSE** the final decision of the Commissioner; and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings for the reasons stated *infra*:

## Procedural History

The Plaintiff protectively filed her application for DIB in August 2021 alleging disability beginning on May 20, 2017[1] because of "R.A. rheumatoid disease", "bipolar", depression and PTSD. (Tr. at 17, 261) Her claim was initially denied in March 2022 and again upon reconsideration in January 2023 (Tr. at 17, 95-100, 102-107). Thereafter, she filed a written request for an administrative hearing (Tr. at 120-121), which was held on April 8, 2024[2] before the Honorable Maria Hodges, Administrative Law Judge ("ALJ") (Tr. at 36-58). On April 22, 2024, the ALJ entered an unfavorable decision (Tr. at 14-35). The ALJ's decision became the final decision of the Commissioner on February 24, 2025 when the Appeals Council denied the Plaintiff's Request for Review (Tr. at 1-5).

On April 18, 2025, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 3) Subsequently, the Plaintiff filed her Brief in support her complaint (ECF No. 6), and in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 7); finally, the Plaintiff filed her Reply Brief (ECF No. 8). Consequently, this matter is fully briefed and ready for resolution.

## The Plaintiff's Background

The record shows that the Plaintiff was 48 years old as of the amended alleged onset date, a "younger individual", and then transitioned to an "individual closely approaching advanced age" by her date last insured during the underlying proceedings. See 20 C.F.R. § 404.1563(c), (d). (Tr.

---

[1] The Plaintiff subsequently amended her onset date to November 15, 2019 (Tr. at 17, 41).

[2] Initially, the hearing was scheduled for December 19, 2023, however, the Plaintiff requested a continuance in order to obtain counsel (Tr. at 59-65).

at 29) She has a limited education, having completed the eleventh grade, and has past relevant work as a cashier, salesclerk and front desk clerk (Tr. at 55-56, 262).

**<u>Standard</u>**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See <u>Blalock v. Richardson</u>, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. <u>Id</u>. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. <u>Id</u>. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. <u>Id</u>. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. <u>Id</u>. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. <u>Id</u>. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. <u>Id</u>. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. <u>Id</u>. § 404.1520(g). The

Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.
>
> (4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the

scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ found the Plaintiff met insured status requirements through September 30, 2021. (Tr. at 19, Finding No. 1) Next, the ALJ determined that the Plaintiff satisfied

5

the first inquiry because she had not engaged in substantial gainful activity since the amended alleged onset date of November 15, 2019 through her date last insured ("DLI"). (Id., Finding No. 2) Under the second inquiry, the ALJ found that through her DLI, the Plaintiff had the following severe impairments: fibromyalgia; arthritis; obesity; major depressive disorder; post-traumatic stress disorder; and bipolar disorder. (Id., Finding No. 3) At the third inquiry, the ALJ concluded that through her DLI, the Plaintiff's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 20, Finding No. 4) The ALJ then found that through her DLI, the Plaintiff had the residual functional capacity ("RFC") to perform light work, except:

> never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, kneel, crouch, and crawl; frequently balance as defined by the Selected Characteristics of Occupations (SCO) of the Dictionary of Occupational Titles (DOT); frequently stoop; avoid concentrated exposure to extreme cold temperatures and vibrations; avoid even occasional exposure to the hazards of moving machinery and unprotected heights; can understand, remember, and carry out simple instructions; occasional changes in the work setting; occasionally interact with the public; and frequently interact with coworkers and supervisors.

(Tr. at 22, Finding No. 5)

At step four, the ALJ found that through her DLI, the Plaintiff was not capable of performing her past relevant work. (Tr. at 29, Finding No. 6) However, given the immateriality of the transferability of job skills, and based on the Plaintiff's age, education, work experience, and RFC through her DLI, the ALJ determined there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed. (Id., Finding Nos. 7-10) Finally, the ALJ determined the Plaintiff had not been under a disability from November 15, 2019 through September 30, 2021, her DLI. (Tr. at 30, Finding No. 11)

**The Plaintiff's Challenges to the Commissioner's Decision**

The Plaintiff alleges that the ALJ's RFC assessment is flawed because she failed to assess the total limiting effects of the Plaintiff's impairments by not appropriately evaluating her self-described limitations complaints, relying on the lack of objective evidence, contrary to the Fourth Circuit's holding in Arakas v. SSA, 983 F.3d 83 (4th Cir. 2020) and Social Security Ruling (SSR) 16-3p; additionally, the Plaintiff's self-described limitations are consistent with the evidence and the ALJ undermined the Plaintiff's self-described limitations by failing to properly consider the other evidence of record – that is, the factors enumerated under 20 C.F.R. § 404.1529 – by improperly increasing the Plaintiff's burden of proof to support her subjective symptoms. (ECF No. 6. at 3-12) Because of all these errors, the Plaintiff asks this Court to remand for further proceedings. (Id. at 12)

In response, the Commissioner states that the ALJ appropriately evaluated the Plaintiff's subjective complaints in compliance with legal standards when assessing her RFC, including the Plaintiff's self-described limitations against the entire record, which included the medical and other evidence (ECF No. 7 at 6-7). The Commissioner argues the ALJ properly found that the evidence did not support the degree of limitations the Plaintiff alleged, as they were inconsistent with the broader record; the ALJ discussed the Plaintiff's activities of daily living as well as the Plaintiff's response to medication, treatment and other measures – all demonstrating the Plaintiff's condition was not disabling (Id. at 7-15). The Commissioner contends that the ALJ did not place undue emphasis on objective medical evidence in evaluating the Plaintiff's subjective complaints, but appropriately weighed the conflicting evidence of record in the final decision, which enjoys support of substantial evidence (Id. at 15-16).

In reply, the Plaintiff argues the Commissioner understates the application of Arakas, and

that the Fourth Circuit has emphasized that a claimant may rely on subjective symptoms alone in other physical impairments, including musculoskeletal and rheumatological impairments, not just fibromyalgia or other impairments that do not typically manifest in objective clinical findings. (ECF No. 8 at 1-2) The Plaintiff points out that the ALJ's discrediting her allegations is further compromised given that the ALJ did not assess the Plaintiff's complaints regarding her fibromyalgia separately from her other physical impairments; this makes it more difficult for the Court to discern whether the ALJ improperly relied on objective findings, even as just one factor, in discounting the Plaintiff's alleged symptoms. (Id. at 2-3) These errors warrant remand. (Id. at 3)

**The Relevant Evidence of Record**[3]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

Medical Records:

The ALJ noted that during the relevant period, the Plaintiff saw family physician Dr. Tammy Bannister for her arthritic and myalgia pain (Tr. at 23, 835-862). The exams showed normal gait and station with abnormal muscle strength due to pain (Id.).

During the period at issue, it was noted that the Plaintiff also treated with rheumatologist Dr. Mathew P. Samuel, and exams showed trigger points bilaterally at the occipital muscle, supraspinatus muscle, trapezius muscle, gluteal muscles, greater trochanter, anterior lower cervical region, second costochondral junction, lateral epicondyle, and medial knee (Tr. at 23, 645-763).

---

[3] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. As acknowledged by the parties, the pertinent medical evidence of record in this appeal concerns the treatment for the Plaintiff's physical impairments and their associated symptoms, including, but not limited to pain.

Records showed that the Plaintiff had very minimal tenderness of PIP joints and bilateral swelling of the MTP joints with cock-up toes and bunion deformity of both first and fifth MTP joints; no tenderness of the shoulders, elbows, hips, knees, or ankles; a normal gait; and the ability to grip and make a fist (Id.). X-rays of both knees revealed minor bilateral osteoarthritis, x-rays of the ankles were unremarkable, x-rays of both feet showed erosions of the great toes, and x-rays of the hands were normal with only some cyst-like changes and joint space narrowing at the carpal joints (Id.). Dr. Samuel diagnosed the Plaintiff with rheumatoid arthritis (with positive rheumatoid factor of multiple sites) and fibromyalgia though she had negative ANA (Id.). Dr. Samuel prescribed medication and noted that she had "good improvement" with medication, however, the Plaintiff continued to report pain, especially at the lateral side of the thigh (Id.).

Dr. Kirt T. Miller, a podiatrist, examined the Plaintiff for bilateral foot pain (Tr. at 23, 704-707). On exam, he noted mild inflammation in the forefoot of both feet and hyperkeratotic lesions of the sub-two three and five regions of left foot, mild contractures of the lesser digits with some prominence of the metatarsal heads due to fat pad atrophy, and soreness to touch and sensitivity of the metatarsal regions (Id.). Dr. Miller did not find any rheumatoid nodules, and there was no pain with range of motion testing or weakness of the feet (Tr. at 23-24, 704-707). An x-ray of both feet revealed lytic changes of the MTPs of the left foot, lytic changes of the hallux interphalangeal joint on the right, and changes indicative of progressive rheumatoid arthritis (Tr. at 27, 703). Based on his exam findings, Dr. Miller diagnosed the Plaintiff with rheumatoid arthritis with associated metatarsalgia of both feet but worse on left (Id.).

The ALJ noted that the overall evidence showed findings of multiple positive trigger points in the upper spine, trapeziuses muscles, and knees, and the Plaintiff had soreness to touch and

9

sensitivity of the metatarsal regions as well as mild inflammation and hyperkeratotic lesions of the left foot and contractures of both metatarsals (Tr. at 24, 645-763, 835-862). The x-rays of the Plaintiff's feet were positive for lytic changes of the MTPs of the left foot, lytic changes of the hallux interphalangeal joint on the right, and changes indicative of progressive rheumatoid arthritis, and bilateral knee x-rays showed minor bilateral osteoarthritis (Id.). Based on all these findings, the ALJ found that the Plaintiff was limited to a light range of work with impaired climbing, kneeling, crouching, crawling, stooping, and balancing, and that she needed to avoid concentrated exposure to extreme cold temperatures and vibration and avoid even occasional exposure to hazards of moving machinery and unprotected heights (Id.).

The ALJ also noted that the evidence shows the Plaintiff stands five feet, eight inches tall and in December 2019, she weighed 189 pounds (Tr. at 24, 764-786). The Plaintiff's BMIs of record were between 25 and 38 (Tr. at 24, 603-644, 645-763, 764-786, 835-862). The ALJ found that the Plaintiff's BMIs support the need to avoid concentrated exposure to vibrations and avoid even occasional exposure to hazards of moving machinery and unprotected heights (Id.).

Prior Administrative Medical Findings:

At both the initial and reconsideration levels of review, State agency medical consultants opined there was insufficient evidence during the applicable period to give an assessment of the Plaintiff's functioning abilities; the ALJ found these opinions unpersuasive, particularly in light of the aforementioned medical evidence from the relevant period (Tr. at 26, 95-100, 102-107, 603-644, 645-763, 764-786, 835-862). Additionally, the ALJ found these opinions inconsistent with not only the evidence concerning the Plaintiff's treatment record, but also inconsistent with the opinion provided by Dr. Kip Beard, a consultative examiner, who found in August 2017 that the

Plaintiff had an impairment to perform physical work-related activities that required prolonged repetitious use of the arms or hands, prolonged weight-bearing or ambulation, as well as lifting and carrying (Tr. at 26, 378-389). The ALJ determined Dr. Beard's opinion was persuasive, as it was supported by objective findings, and consistent with the evidence of record during the relevant period as it related to objective findings and the Plaintiff's treatment history (Tr. at 26, 645-763, 835-862).

### The Plaintiff's Self-Described Limitations:

In the November 2022 "Function Report" she completed in connection with her claim for benefits, the Plaintiff reported that she is unable to sit, stand, or walk for long periods (Tr. at 301). She stated she takes care of a small dog, such as taking it for "short potty breaks", feeding and watering, but she is unable to carry her dog or take it out for walks (Tr. at 302, 305). She can do laundry, "light cleaning" with breaks (Tr. at 304). The Plaintiff reported her rheumatoid arthritis affects lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and using her hands (Tr. at 306).

## The Administrative Hearing:

### The Plaintiff's Testimony:

Among other impairments, the Plaintiff specified that her pain from arthritic flare-ups prevented her from working during the relevant period, and only took medication for it (Tr. at 45, 47). She experienced side effects from her medication, including nausea, headaches, dizziness and fatigue (Tr. at 50). She estimated that she could stand/walk for about fifteen to twenty minutes before she needed a break (Tr. at 46). She testified that she could sit for about fifteen minutes before needing to get up and move around (Id.). She could only lift two to three pounds (Id.). The

11

Plaintiff testified that during that time, she would walk in the yard, what she normally does now, and was able to take care of her own personal care (Tr. at 47). She did not do many chores around the house, and lived with her parents, so they would take care of chores as well as shopping (Id.). She only left the house for doctors appointments and going to the store; for enjoyment, she would read her Bible and walked her dog in the yard, but she did not do much during the day because of fatigue, and would take naps for a couple of hours (Tr. at 48-49). The Plaintiff testified that she experienced flare-ups at least twice a month, lasting three days to a week, where she had a rash and burning sensation in her joints (Tr. at 53-54). During these flare-ups, she "couldn't do anything. I was just stuck there laying in the bed." (Tr. at 54)

The Vocational Expert's Testimony:

In response to the ALJ's hypothetical individual of the Plaintiff's age, education, and work background, with the controlling RFC, the vocational expert testified that the individual could not perform the Plaintiff's past relevant work but could perform other light jobs such as a marker, router and small parts assembler (Tr. at 56). The vocational expert also opined that an individual off task for over ten percent of the workday, or being absent more than once a month would be unable to maintain employment (Tr. at 57).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

As an initial matter, the Plaintiff must show that she became disabled prior to the expiration of her insured status on September 30, 2021. (Tr. at 19) The DIB program provides for payment of disability benefits to individuals who are "insured" by virtue of their contributions to the Social Security trust fund through Social Security tax on their earnings. 20 C.F.R. §§ 404.110, 404.315. To be entitled to DIB in this case, the Plaintiff bears the burden of showing that she became disabled prior to September 30, 2021, the date when her insured status expired for the purposes of DIB. See 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). A claimant who first satisfies the medical requirements for disability only after her date last insured will not be entitled to DIB benefits. 20 C.F.R. § 404.131(a). See also Jenkins v. Astrue, No. 3:10cv705, 2012 WL 3776370, at *3 n.6 (E.D. Va. Apr. 25, 2012) (citing Matullo v. Bowen, 926 F.2d 240, 246 (3d Cir. 1990)) (explaining that a worsened condition or a new impairment arising after the date last insured cannot be a basis for remand or an award of disability benefits). Therefore, the relevant period for

purposes of DIB is from November 15, 2019, the date of the Plaintiff's amended alleged disability onset, to September 30, 2021, when her insured status expired (Tr. at 19).

The RFC Assessment:

As noted *supra*, the Plaintiff alleges the ALJ incorrectly assessed a light RFC by failing to consider the limiting effects from her physical impairments. The RFC determination is the most a claimant can do despite her restrictions or limitations, and is solely an administrative assessment made by the adjudicator based on all the relevant evidence in the record. See Social Security Ruling (SSR) 96-8p, 1996 WL 3744184, at *1; 20 C.F.R. § 404.1545(a); Felton-Miller v. Astrue, 459 Fed. Appx. 226, 230-231 (4th Cir. 2011); see also, Thaxton v. Colvin, No. 2:16-cv-00281, 2017 WL 359219, at *18 (S.D.W. Va. Jan. 3, 2017)(Eifert, M.J.), *report and recommendation adopted*, 2017 WL 359201 (S.D.W. Va. Jan. 24, 2017); Gilmore v. Kijakazi, 2022 WL 2869047, at *8 (M.D.N.C. Jul. 21, 2022)("the ALJ labored under no requirement to fashion an RFC that exactly matched Plaintiff's testimony or the opinion evidence."), *report and recommendation adopted*, 2022 WL 3446133 (M.D.N.C. Aug. 17, 2022).

In this case, the ALJ began her RFC analysis with a discussion of the Plaintiff's hearing testimony as well as statements made in connection with her application for benefits (Tr. at 19-20, 21, 22-23, 25), summarized *supra*, and then determined that the Plaintiff's allegations of her symptoms were not consistent with the medical evidence and other evidence in the record during the relevant period (Tr. at 25). The ALJ noted the medical records documenting ongoing treatment for the Plaintiff's arthritic and myalgia pain, rheumatoid arthritis and fibromyalgia, including her bilateral foot pain (Tr. at 23-24). Of relevance here, and as observed by the parties, the ALJ discussed the treatment notes throughout the relevant period, summarized *supra*, and while they

14

reflected continued complaints of overall pain, the medical records also indicated generally mild objective examination and diagnostic imagining findings, including, but not limited to: normal gait and station; very minimal to no tenderness of joints; ability to grip and make a fist; good improvement with medication; no pain with range of motion testing or weakness of both feet; and no pain with range of motion testing or weakness of the feet (Tr. at 23-24).

The ALJ then considered the Plaintiff's alleged activities of daily living, as supported by the Plaintiff's hearing testimony that she could perform her personal care and do some chores, go to the store, and she walked her dog in the yard (Tr. at 25). In addition to her hearing testimony, the ALJ considered the Plaintiff's function report, and compared her allegations with the relevant medical evidence, specifically noting that while the Plaintiff reported significant problems using her hands and standing and/or walking, and having been diagnosed with rheumatoid arthritis and fibromyalgia, examination of the hands showed her having the ability to grip and make a fist, and that she had very minimal tenderness of her PIP joints and x-rays were normal (Id.). Regarding the Plaintiff's allegations of being limited in standing or walking, the ALJ also recognized that x-rays of the knee showed very minor rheumatoid arthritis, and of the ankles were unremarkable; exams also showed the Plaintiff had normal gait and station and ability to stand (Id.). The ALJ also noted that no examining sources indicated the Plaintiff used an ambulatory device or was prescribed one (Id.). From the overall evidence during the relevant period, the ALJ determined that the Plaintiff's asserted limitations were not entirely consistent with same (Id.).

In sum, to accommodate the Plaintiff's physical impairments, which was corroborated by the evidence showing multiple positive trigger points in the upper spine, trapezius muscles, knees, soreness to touch and sensitivity of the metatarsal regions, including mild inflammation and

hyperkeratotic lesions of the left and contractures of both metatarsals, along with x-rays demonstrating progressive rheumatoid arthritic changes of both feet and x-rays of both knees showing minor bilateral osteoarthritis, the ALJ fashioned the resulting RFC, *supra* (Tr. at 24).

Evaluating Subjective Symptoms:

To the extent that the Plaintiff alleges the ALJ discounted the Plaintiff's allegations based on the objective examination findings, contrary to the holding in Arakas, the Court notes the following: SSR 16-3p clarifies the evaluation of symptoms, including pain: 20 C.F.R. § 404.1529 requires a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

The Ruling further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. See, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons

about the individual's medical history, treatment and response, prior work record and efforts to

work, daily activities, and other information concerning the individual's symptoms and how the

symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish her capacity to work to

the extent that alleged functional limitations are reasonably consistent with objective medical and

other evidence. 20 C.F.R. § 404.1529(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your
> prior work record, your statements about your symptoms, evidence submitted by
> your treating, examining, or consulting physician or psychologist, and observations
> by our employees and other persons . . . Factors relevant to your symptoms, such
> as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or
> have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your
> pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms
> (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on
> a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to
> pain or other symptoms.

Id. § 404.1529(c)(3).

The Court further recognizes that "an ALJ is not required to discuss all the evidence

submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not

considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D.S.C. Jan. 6, 2015) (quoting Craig

v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that

an ALJ must use in his . . . analysis as long as there is sufficient development of the record and

explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., 2010 WL

2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id.

As noted by the Plaintiff, the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. Id. For purposes herein, this Court must determine if the subject ALJ's analysis relied primarily on the lack of objective medical evidence as the reason for discounting the Plaintiff's complaints.

As discussed *supra*, the ALJ acknowledged the Plaintiff's alleged symptomology and the functional limitations caused by her impairments, and after properly performing the two-step process, as discussed above, the ALJ proceeded to review the evidence of record and reconciled it with the Plaintiff's statements concerning the intensity, persistence and limiting effects of her

symptoms, and found that they were not entirely consistent with the medical and other evidence from the relevant period.

The Plaintiff points out that this Court has previously determined that adjudicators should evaluate a claimant's subjective complaints as they relate to fibromyalgia separately from his/her other physical impairments. (ECF No. 8 at 3; citing <u>Priscilla S. v. Dudek</u>, No. 3:24-cv-00561, 2025 WL 1109438, at *11 (Mar. 27, 2025), *report and recommendation adopted*, 2025 WL 1106081 (S.D.W. Va. Apr. 14, 2025) (citing <u>Treadway v. Commissioner of Social Security</u>, 2024 WL 4341325 (W.D.N.C. Sept. 27, 2024)). The undersigned observes the same situation is presented here: the ALJ did not *separately* discuss the Plaintiff's subjective complaints as they related to fibromyalgia, and instead, relied upon the objective medical evidence to discount her symptoms concerning their severity, persistence, and limiting effects with regard to *all* of the Plaintiff's symptoms concerning *all* of her impairments. While the undersigned appreciates that an adjudicator is solely responsible for reconciling the conflicting evidence consisting of the Plaintiff's allegations of pain and other symptoms with the objective and other evidence of record, the foregoing shows that the ALJ in this case appears to have relied primarily on the lack of objective evidence to discount the Plaintiff's subjective complaints, and specifically with regard to the Plaintiff's complaints stemming from fibromyalgia. To that extent, the undersigned **FINDS** that because the ALJ did not analyze the Plaintiff's fibromyalgia separately from her other conditions, notably, rheumatoid arthritis, the ALJ's subjective symptoms analysis is not supported by substantial evidence. To that extent, the ALJ ran afoul of what <u>Araxas</u> and its progeny sought to prevent: relying primarily on the objective evidence to find the Plaintiff's subjective complaints

are inconsistent, and without sufficient consideration of the evidence that do support her claims. Arakas, 983 F.3d at 98.

The undersigned further **FINDS** that the final decision denying the Plaintiff's application for disability insurance benefits is not supported by the substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's request for remand (ECF No. 6), **DENY** the Commissioner's request to affirm the decision below (ECF No. 7), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner for further administrative proceedings in order for the ALJ to consider not just the objective medical evidence, but also the other evidence of record for a fulsome evaluation of this Plaintiff's self-described limitations, particularly as they concern her severe impairment, fibromyalgia.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: September 17, 2025.



Omar J. Aboulhosn
United States Magistrate Judge